UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PATRICIA ELLEN JOYCE,       )
        Plaintiff           )
                            )
        v.                  )    C.A. No. 11-cv-30032-MAP
                            )
MICHAEL J. ASTRUE,          )
Commissioner, Social        )
Security Administration,    )
        Defendant           )

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION
OF THE COMMISSIONER
(Dkt. Nos. 10 & 14)

March 19, 2012

PONSOR, U.S.D.J.

I. INTRODUCTION

This action seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff applied for SSI on December 31, 2007 and for DIB on January 2, 2008, alleging disability since February 1, 2007, due to osteoarthritis in both knees, Graves' disease, depression,

and anxiety.  After a hearing on September 17, 2009, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and denied Plaintiff's claim.  (A.R. 84-94.) The ALJ's decision was forwarded to the Decision Review Board, which remanded the case to the ALJ with instructions to give further consideration to the severity and limiting effects of Plaintiff's mental impairment, reevaluate Plaintiff's residual functional capacity ("RFC"), and obtain supplemental evidence from a vocational expert, if warranted.  (A.R. 98-99.)  Following another hearing on June 22, 2010, the ALJ issued a second decision denying Plaintiff's claim.  (A.R. 103-10.)  The Decision Review Board did not conduct a review, thereby affirming the ALJ's decision on December 8, 2010.  Plaintiff filed this complaint on February 8, 2011, seeking a reversal of the ALJ's decision.

Plaintiff now moves for judgment on the pleadings (Dkt. No. 10), and Defendant moves for an order affirming the decision of the Commissioner (Dkt. No. 14).  For the reasons stated below, Plaintiff's motion will be denied, and Defendant's motion will be allowed.

## II. FACTS

At the time of the second administrative hearing, Plaintiff was forty-three years old, had completed two years of college, and had previously worked as a dental assistant and bartender. (A.R. 32, 40, 69.)

A. Physical Conditions.

In 2007, Plaintiff met several times with Dr. John Corsetti of the New England Orthopedic Surgeons ("NEOS") concerning pain in her knees. X-rays revealed that Plaintiff suffered from arthritis in both knees. (A.R. 319, 327.) Plaintiff received a series of cortisone and Hyalgan injections, but reported no relief. (A.R. 365-70, 395.) In October 2008, Plaintiff underwent a total knee replacement surgery on her left knee. (A.R. 456.)

In November 2008, Plaintiff was treated at Wing Memorial Emergency Room after falling on her left knee. The emergency room physician saw no swelling, no deformity, some medial tenderness, and decreased range of motion. He advised Plaintiff to use ice and take over-the-counter pain medication. (A.R. 444-46, 450.) Plaintiff returned to NEOS for a follow-up. An x-ray showed that her prosthetic knee

was in good position and she was diagnosed with left knee contusion. (A.R. 455.) Six weeks after the surgery, Plaintiff reported that she was doing "fairly well" and ambulating with a cane, but did indicate some pain in her right knee. She received an injection in her right knee to relieve the pain. (A.R. 454.)

In early 2009, Plaintiff was able to bear full weight on her left knee and walked without support. She continued to complain of pain in her right knee and received a steroid injection. (A.R. 495-96.) In September 2009, Plaintiff received another injection in her right knee and discussed the possibility of another knee replacement surgery. (A.R. 609.)

On October 9, 2009, Plaintiff complained of experiencing pain in her left knee after walking more than four hours. An examination revealed that she had full range of motion and good strength and stability in the knee. The doctor diagnosed her with an overuse syndrome and advised moderate activity. (A.R. 606-07.)

In November 2009, Plaintiff was evaluated by Paul Azimov at Pioneer Spine and Sports Physicians. She returned

4

to Dr. Azimov in December 2009, complaining of pain in both knees. Dr. Azimov noted that Plaintiff could change positions from sitting to standing without difficulty, but her right knee pain was exacerbated by sitting for long periods of time, going up stairs, and physical therapy. She received another cortisone injection in her right knee. (A.R. 636-41.) Plaintiff returned to Dr. Azimov in January 2010. He prescribed Percocet and advised Plaintiff to follow up in six weeks. (A.R. 599, 632.)

Plaintiff also claims disability due to Graves' disease. Plaintiff has received treatment for hyperthyroidism since early 2006 with Dr. Marc Vanderleeden. In November 2006, Dr. Vanderleeden's impression was subclinical hyperthyroidism. In October 2007, Plaintiff reported she was symptomatic, feeling shaky, nervous, sweaty, and hot. Dr. Vanderleeden treated Plaintiff with radioactive iodine. Dr. Vanderleeden saw Plaintiff again in December 2007 and noted that she had markedly improved after treatment. He described her Graves' disease as mild. Dr. Vanderleeden saw her again in February and in June 2008 and noted that, on both occasions, she was feeling better and

exhibited no more symptoms. (A.R. 330-52.)

B. <u>Mental Conditions</u>.

In a letter dated October 2008, Joanne Audyatis indicated that she had counseled Plaintiff between January 2006 and April 2007 for financial and marital issues. She noted that Plaintiff was taking anti-anxiety and anti-depression medication and found that Plaintiff's anxiety affected her ability to concentrate and function in the workplace. (A.R. 535.)

In May 2008, Plaintiff underwent a consultative examination with Dr. Leon Hutt, who diagnosed her with anxiety and mood disorders. He assigned her a Global Assessment of Functioning ("GAF") score of 70, which indicates some mild symptoms or some difficulty in social stressors. (A.R. 364.) He found that Plaintiff was able to understand, follow, and remember work-related instructions and procedures and believed she could psychologically tolerate stressors associated with employment. (A.R. 362-64.)

In March 2009, Plaintiff was referred to the Center for Psychological & Family Services for a diagnostic evaluation.

6

She reported being unable to work, nervous, anxious, and overwhelmed. In April 2009, Plaintiff had a GAF of 57-61, indicating moderate symptoms, a linear thought process, and no issues with short or long-term memory. (A.R. 478-87.) In June, Plaintiff showed no signs of depression, but did exhibit anxiety. (A.R. 504.) In July, Plaintiff reported increased depression after losing her house and was prescribed Wellburtrin. She reported felling much better in January 2010. (A.R. 562, 599.) From February through April 2010, Plaintiff reported reduced anxiety. (A.R. 624, 628.)

C. RFC Assessments.

1. Physical RFC.

In February 2008, Ludmila Perel, a non-examining state agency medical consultant, reviewed the medical evidence in the record and assessed Plaintiff's physical RFC. She determined that Plaintiff was capable of light work, with an ability to stand and/or walk for at least two hours and sit for six hours in an eight-hour day. She further determined that Plaintiff could occasionally crawl and climb ramps, stairs, ladders, ropes, and scaffolds. (A.R. 354-55.)

In July 2008, Shankar Narayan, a state agency medical

consultant, also found that Plaintiff was capable of light work as long as the postures listed above were required only occasionally and the work did not involve concentrated exposure to extreme cold and hazards. (A.R. 419-21.)

   2.   Mental RFC.

In May 2008, Ginette Langer, a state agency psychologist, reviewed the record and completed a mental RFC assessment. Dr. Langer found that Plaintiff had a mood and anxiety disorder, but did not believe that the disorder was severe. (A.R. 371-84.)

In August 2008, Brian O'Sullivan, a state agency psychologist, agreed with Dr. Langer's assessment. (A.R. 425-38.)

D.  Hearing Testimony.

Plaintiff testified at the hearings that, after her knee replacement surgery, her left knee was constantly swollen and bruised. (A.R. 13.) She stated that she had to use a cane when walking for long periods or on uneven surfaces. (A.R. 62-63.) She reported receiving pain medication and cortizone injections every three months. (A.R. 22.) Plaintiff further testified that she could only

8

walk for about fifteen minutes before needing to rest, that she experienced pain when moving her knee, that she had difficulty going up and down stairs, and that her knee pain kept her from attending events with her family. (A.R. 47-48, 62-64.) Plaintiff admitted, however, that she exercised every day, including occasionally biking for fifteen to twenty minutes. (A.R. 18.)

With regard to her mental health, Plaintiff testified that the symptoms of her Graves' Disease included "hyper-ness," shaky hands, hot flashes, heart palpitations, weight loss, hair loss, and feeling "edgy." (A.R. 53.) She also testified that she had difficulty concentrating, suffered from memory problems, and had difficulty leaving her home because of her depression and anxiety. (A.R. 25-26, 58-59, 65-66.) Plaintiff reported having to quit her job as a dental assistant because she could not concentrate. (A.R. 54.)

Plaintiff also testified that she is the sole caretaker of her two children, ages four and six. Her six-year-old child, she reported, has autism and requires a lot of help and attention. She testified to doing chores around the

house, cooking dinner for her children, and taking her children to after school activities and psychiatrist appointments. (A.R. 18-19, 27, 44-45, 66.) Plaintiff further testified that she often goes grocery shopping late at night to avoid large crowds, but admitted that she does occasionally run errands while her daughters are at school. (A.R. 27, 44.)

A vocational expert testified that an individual with Plaintiff's age, education, vocational background, and RFC would be capable of performing work as a dental assistant. (A.R. 32.)

E. <u>ALJ's Findings</u>.

At Step One of the disability adjudicative process, the ALJ found that Plaintiff had not engaged in gainful activity since February 1, 2007, the onset date of her alleged disability. (A.R. 105.) At Step Two, the ALJ found that Plaintiff's osteoarthritis in both knees and depression were severe impairments. (A.R. 105.) At Step Three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairments. (A.R. 108.) At Step Four, the ALJ found that Plaintiff had the RFC to

perform light work, except:

> [Plaintiff] is limited to standing and/or walking for four hours per 8-hour day. She can sit for up to eight hours per day. [Plainitff] is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. She must avoid climbing ladders/ropes/ scaffolds. [Plaintiff] requires use of a cane for ambulating long distances; she must avoid hazardous machinery. She can focus for two hour intervals before requiring a break. [Plaintiff] is able to adapt to occasional changes in the work environment.

(A.R. 108.) In light of this RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a dental assistant. (A.R. 110.)

### III. DISCUSSION

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because (1) the ALJ improperly concluded that Plaintiff's testimony regarding the severity of her pain was not credible; (2) the ALJ did not give sufficient weight to Plaintiff's mental health condition; and (3) the ALJ did not give sufficient weight to the treating physicians' diagnoses.

A. Standard of Review.

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the

Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the ALJ. See id. at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

B.  Credibility.

Plaintiff argues first that the ALJ's RFC assessment was flawed because she concluded that Plaintiff's

allegations of the severity of her physical and mental limitations were not supported by the objective medical evidence. (A.R. 109-10.) This court disagrees.

The ALJ has the responsibility to determine issues of credibility and to draw reasonable inferences from the record. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). A plaintiff's description of symptoms and limitations cannot by itself establish disability; the ALJ must also consider objective medical evidence and any other available evidence, such as medications and daily activities, to determine whether the plaintiff's testimony is consistent with the remainder of the record. 20 C.F.R. § 404.1529(a), (c). The ALJ's credibility determination "is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

Here, the ALJ pointed to specific evidence in the record to support her conclusion that Plaintiff's description of the severity of her symptoms was not entirely credible. With regard to Plaintiff's knee pain, the ALJ

acknowledged that Plaintiff underwent left knee replacement surgery and that she continues to complain of pain in both knees. The ALJ noted, however, that despite Plaintiff's statements concerning the severity of her pain, Plaintiff was able to care for her two young children, one of whom is autistic; she worked outdoors (e.g. gardening); she was able to walk four hours at a fair; and she exercised daily. The ALJ further noted that a medical examination showed Plaintiff was responding well to medication and that she exhibited full range of left knee motion as well as strength and stability in her right knee. Finally, the ALJ noted that Plaintiff's treating physician did not impose any physical limitations on Plaintiff, and instead advised her to continue with moderate activities. (A.R. 109.)

With regard to Plaintiff's mental limitations, the ALJ noted that, while the evidence suggested that Plaintiff's mental health may impose some limits on her ability to concentrate at work, her daily activities -- including acting as the sole caretaker of her children, running errands, and being able to arrange and manage her children's various appointments -- contradicted her claims of greater

mental limits.  Additionally, a consulting examiner found that Plaintiff had a relatively high GAF score of 70, could understand, follow, and remember work-related instructions and procedures, and could probably psychologically tolerate stressors associated with employment.  (A.R. 109-10.)  In light of this evidence, this court cannot say that the ALJ erred in giving less weight to Plaintiff's testimony regarding the severity of her symptoms.

C. <u>Mental Health</u>.

Plaintiff next argues that the ALJ did not afford sufficient weight to her mental health when assessing her RFC.  This court, again, disagrees.  The ALJ considered the testimony of Plaintiff's treating physicians as well as Plaintiff's own account of her mental health.  However, the ALJ determined that Plaintiff did not have sufficiently severe mental health limits to render her disabled.  (A.R. 109-10.)  Considering the evidence described earlier -- including the assessment of state agency psychologists, Plaintiff's GAF scores, the testimony of the consulting examiner, and Plaintiff's daily activities -- this conclusion is supported by substantial evidence.

D. <u>Treating Physicians</u>.

Finally, Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating physicians. The ALJ is generally required to give more weight to the opinions of treating physicians than to other medical opinions. 20 C.F.R. § 494.1527(d)(2). The ALJ should give controlling weight to treating physicians' opinions if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. <u>Id.</u>

The ALJ in this case did not discredit the opinions of Plaintiff's treating physicians. None of the treating physicians completed RFC assessments, and none directly stated that Plaintiff would be unable to handle the type of light work activity contemplated by the ALJ's decision. The state agency assessments, on which the ALJ relied along with the other evidence in the record, were consistent with the examinations conducted by Plaintiff's treating physicians.

As the ALJ noted, while Plaintiff had severe left knee pain prior to her knee replacement surgery, Dr. Krushell,

16

one of the treating physicians, found that Plaintiff was doing well after the surgery. Dr. Krushell further found that, although Plaintiff still reported some pain in November 2008, the pain was less severe and her prosthesis was in a good position. By February 2009, Dr. Krushell noted that Plaintiff reported bearing full weight on her left knee, she was ambulating without support, and she was able to exercise daily. Dr. Krushnell advised Plaintiff to engage in moderate activities. The ALJ's RFC assessment is consistent with these reports, which tend to indicate that Plaintiff's knee pain improved after surgery and that Plaintiff was able to engage in moderate activities, such as those contemplated by the RFC assessment.

Likewise, in assessing Plaintiff's mental health, the ALJ considered the opinions of Plaintiff's treating physicians, which indicated Plaintiff suffered from depression and anxiety, and found that Plaintiff's depression constituted a severe impairment. However, in light of the mental health evidence described earlier in this memorandum, the ALJ reasonably concluded that a finding of more severe mental health limitations was not consistent

17

with other substantial evidence in the record.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10) is hereby DENIED, and Defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt. No. 14) is hereby ALLOWED. The clerk will enter judgment for Defendant. The case may now be closed.

It is So Ordered.

                                               /s/ Michael A. Ponsor
                                               MICHAEL A. PONSOR
                                               U.S. District Judge